1
2
3
4
5
6
7          **UNITED STATES DISTRICT COURT**
8             **DISTRICT OF NEVADA**
9
10   JAMES S. TATE, M.D.,
11        Plaintiff,                              Case No. 2:08-cv-1183-LDG (GWF)
12   v.                                           <u>ORDER</u>
13   UNIVERSITY MEDICAL CENTER OF
     SOUTHERN NEVADA, *et al.*,
14
         Defendants.
15

16          Following an altercation involving the plaintiff, Dr. James Tate, and the parent

17   and grandparent of a minor patient at University Medical Center of Southern Nevada

18   (UMC), Dr. John Fildes removed Tate from the Trauma Department call schedule.  Tate

19   subsequently brought this suit against Fildes, UMC, Kathleen Silver, Dr. John Ellerton, Dr.

20   Marvin Bernstein, the Medical and Dental Staff of UMC (Medical Staff), and each of the

21   County Commissioners.[1]

22          Previously, the Court dismissed several of Tate's claims with prejudice and several

23   claims without prejudice.  Tate moves for leave to file a Third Amended Complaint (#115)

24   "to address certain pleading insufficiencies which this Court found in its Order."  The

25   —————————————

26          [1]    It would appear Tate is suing the county commissioners in their capacity as
     members of the Board of Trustees for UMC.

1   defendants oppose the motion (## 121, 124) only to the extent that Tate's proposed Third

2   Amended Complaint adds an additional claim not previously alleged.

3        Medical Staff, Ellerton, Fildes, and Bernstein (the "Doctor Defendants") move for

4   summary judgment as to Tate's second, tenth, and eleventh claims (#125).[2]   Tate opposes

5   the motion (#127), and the Doctor Defendants have filed a reply (#130).

6        UMC, the County Commissioners, and Silver (the "UMC Defendants") move for

7   summary judgment as to Tate's second, sixth, tenth, eleventh and twelfth claims (#126).[3]

8   Tate opposes the motion (#132), and the UMC Defendants have filed a reply (#133).

9        Motion for Summary Judgment

10       In considering a motion for summary judgment, the court performs "the threshold

11  inquiry of determining whether there is the need for a trial—whether, in other words, there

12  are any genuine factual issues that properly can be resolved only by a finder of fact

13  because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty*

14  *Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To succeed on a motion for summary judgment,

15  the moving party must show (1) the lack of a genuine issue of any material fact, and (2)

16  that the court may grant judgment as a matter of law.  Fed. R. Civ. Pro. 56(c);  *Celotex*

17  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

18       A material fact is one required to prove a basic element of a claim.  *Anderson,* 477

19  U.S. at 248.  The failure to show a fact essential to one element, however, "necessarily

20  renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

21

22  ─────────────────

23       [2]     These claims are identical in both Tate's Second Amended Complaint and his
    proposed Third Amended Complaint.  Accordingly, the Court may address the Doctor
24  Defendants' motion on its merits prior to considering Tate's motion for leave to file the
    proposed Third Amended Complaint.

25       [3]     For the same reasons noted in footnote 2, the Court may address the UMC
    Defendants' motion on its merits prior to considering Tate's motion for leave to file the
26  proposed Third Amended Complaint.

1   "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

2   adequate time for discovery and upon motion, against a party who fails to make a showing

3   sufficient to establish the existence of an element essential to that party's case, and on

4   which that party will bear the burden of proof at trial."  *Id*.  "Of course, a party seeking

5   summary judgment always bears the initial responsibility of informing the district court of

6   the basis for its motion, and identifying those portions of 'the pleadings, depositions,

7   answers to interrogatories, and admissions on file, together with the affidavits, if any,' which

8   it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S.

9   at 323.  As such, when the non-moving party bears the initial burden of proving, at trial, the

10   claim or defense that the motion for summary judgment places in issue, the moving party

11   can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the

12   district court–that there is an absence of evidence to support the nonmoving party's case."

13   *Celotex*, 477 U.S. at 325.  Conversely, when the burden of proof at trial rests on the party

14   moving for summary judgment, then in moving for summary judgment the party must

15   establish each element of its case.

16   Once the moving party meets its initial burden on summary judgment, the non-

17   moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro.

18   56(e).  As summary judgment allows a court "to isolate and dispose of factually

19   unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the

20   evidence before it "in the light most favorable to the opposing party."  *Adickes v. S. H.*

21   *Kress & Co.*, 398 U.S. 144, 157 (1970).  The allegations or denials of a pleading, however,

22   will not defeat a well-founded motion.  Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co.*

23   *v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

24

25

26

Factual Background

As alleged by Tate in his complaint, in 1991, he entered into a Trauma Services [sic][4] Agreement (TSA) with UMC to provide trauma surgery services to UMC, and provided those services until August 8, 2008.

On August 5, 2008, Tate found himself in a "situation"[5] with the father and grandmother of a minor patient.  In his complaint, he alleges that they were verbally hostile and aggressive, that he removed himself from the room, that they came after him in a fast and aggressive manner, stopping an inch away from him, that he placed his hands on the father and pushed him back "with the intent to create some space," and subsequently did the same with the grandmother.  After a member of the nursing staff intervened and pulled the father and grandmother away, Tate finished his departure.

On August 8, Silver (whom Tate alleges is an employee of UMC) sent Fildes (whom Tate alleges is UMC's Medical Director of Trauma Services) a letter requesting that he remove Tate from the Trauma Department call schedule.  On that same date, Fildes sent Tate a letter stating that, effective immediately, he would be removed from the Trauma Department call schedule indefinitely.  He has not worked as a trauma surgeon at UMC since that date.

Tate further conceded, in his complaint, that after his removal from the call schedule, he possessed his clinical privileges to practice medicine at UMC.[6]

_____

[4]     Tate references the TSA in both his Second Amended Complaint and proposed Third Amended Complaint, and relies upon it to assert several claims.  A copy of the TSA, signed by Tate, has been submitted to the Court.  The document is titled "Trauma Surgery Agreement."

[5]     Second Amended Complaint, paragraph 46.

[6]     As noted by the Ninth Circuit in its Order dismissing Tate's appeal as moot, Tate "has since lost all of his clinical privileges at the hospital."  Tate has challenged the subsequent loss of his clinical privileges in a separate lawsuit.  The present suit challenges his removal from the call schedule.

1        Procedural Background

2        In his first claim, brought pursuant to 42 U.S.C. §1983, Tate alleged that all

3   defendants violated his Fourteenth Amendment rights.  The Court granted summary

4   judgment in favor of all defendants.  Of particular relevance to the current motions for

5   summary judgment, the Court stated: "Tate's complaint permits only the inference that

6   Silver and Fildes limited one of several avenues by which Tate could exercise his privilege

7   to admit patients, but did not limit the privilege itself.  As the constitutionally protected

8   property interest lies in the clinical privilege, rather than an employment position that

9   provides one avenue to exercise those privileges, the court finds that the first claim must be

10  dismissed with prejudice as to each defendant."

11       Tate's second claim for relief, brought against all defendants, seeks a declaration

12  regarding and injunctive relief requiring reversal of the de facto suspension, alteration or

13  modification of Plaintiff's clinical privileges.

14       In his sixth claim for relief, Tate alleged that all defendants breached the TSA.  As

15  UMC is the only defendant that is a party to the TSA, the Court dismissed the claim, with

16  prejudice, as to each defendant except UMC.

17       The Court construed Tate's tenth claim for relief, asserted against all defendants, as

18  alleging that the defendants breached the implied covenant of good faith and fair dealing in

19  two different contracts: (a) the TSA, and (b) a contract consisting of the Medical Staff's

20  Bylaws, Credentialing Manual and other documents governing defendants' treatment of

21  Tate's clinical privileges (hereinafter "Bylaws").  To the extent that Tate's tenth claim rested

22  upon the TSA, the Court dismissed the claim, with prejudice, as to each defendant except

23  UMC.  The Court did not address the merits of Tate's tenth claim to the extent it rested

24  upon a contract consisting of the Bylaws, Credentialing Manual, and other documents, as

25  the defendants had not raised the issue in moving for dismissal.

26

1    In his eleventh claim for relief, asserted against all defendants, Tate alleged the

2    defendants were negligent in failing to follow the procedures set forth in the Medical Staff's

3    Bylaws, Credentialing Manual and other documents governing defendants' treatment of

4    Tate's clinical privileges.  The Court denied the moving defendants' argument that, as Tate

5    had alleged they were parties to a contract consisting of these documents, he was limited

6    to only bringing a contract claim against them.  The Court indicated that Tate could

7    proceed on the alternative theory that the moving defendants were not a party to a contract

8    created by these documents.

9    Tate's twelfth claim for relief alleges negligence against the UMC defendants for

10   breaching a duty to provide a safe work environment.

11   <u>Analysis</u>

12   At their core, the Defendants' motions argue that Tate's second, tenth, and eleventh

13   claims each rest upon his underlying premise that his clinical privileges at UMC were

14   suspended by his removal from the UMC Trauma Department call schedule.  The

15   defendants note, correctly, that the Court previously rejected this premise.  In dismissing

16   Tate's §1983 claim with prejudice, the Court determined that Tate's removal from the call

17   schedule, while suspending an employment opportunity providing one avenue by which he

18   could exercise his clinical privileges, was not a suspension or revocation of his clinical

19   privileges.

20   Tate's oppositions and the allegations of his complaint confirm that these claims rest

21   upon his argument that his clinical privileges at UMC were suspended by his removal from

22   the UMC Trauma Department call schedule.  As summarized by Tate, he argues in support

23   of this second claim for relief that "as Defendants failed to abide by mandatory and well-

24   established policies denying the Plaintiff a pre-deprivation hearing, they violated the

25   Plaintiff's <u>constitutional rights</u>."  Opposition to Doctor Defendants' Motion, at 23 (emphasis

26   added).  Tate's oppositions acknowledge that his second claim seeks injunctive and

6

declaratory relief based upon the §1983 violation he alleged in his first claim.  Thus, as

suggested by the defendants, the Court's dismissal of Tate's first cause of action with

prejudice necessarily requires that his second claim also be dismissed with prejudice.

As to the claim for breach of the implied covenant of good faith and fair dealing,

Tate argues that "the lack of a constitutionally-protected property interest does not

necessarily foreclose the possibility of a legally-binding agreement between the Plaintiff

and the Defendants."  Opposition to Doctor Defendants' Motion, at 23.  Tate then

extensively argues that the Bylaws created a contract between him and the defendants

governing his clinical privileges.  Tate's argument in opposition is consistent with the

allegations of his complaint, in which he alleges that the Defendants "failed to follow the

procedures set forth in the Defendants' Bylaws, Credentialing Manual and other governing

documents when they suspended Plaintiff's privileges."  Second Amended Complaint,

paragraph 169.

Further, as Tate alleges in his eleventh cause of action for negligence, "Defendants

had a duty of care to act reasonably and follow the Bylaws, Credentialing Manual and other

governing documents in their treatment of Plaintiff's privileges."  Id., at paragraph 176.  He

further alleges: "Defendants failed to follow the procedures set forth in the Defendants'

Bylaws, Credentialing Manual and other governing documents when they suspended

Plaintiff's privileges, thereby breaching their duty to Plaintiff."

The allegations of Tate's claims and his arguments in opposition to the pending

motions for summary judgment establish that, as suggested by the Defendants, his tenth

and eleventh claims for relief also rest upon the same premise that his removal from the

Trauma Department call schedule was a de facto suspension or revocation of his clinical

privileges.

The Court has rejected that argument.  Regardless of the theory of recovery he

advances, Tate conceded in his complaint that (as relevant to this complaint) he possessed

7

his clinical privileges at UMC after his removal from the Trauma Department call schedule.
While the removal from the call schedule ended one avenue of employment opportunity by
which Tate could exercise his clinical privileges, the removal was not a suspension or
revocation of his clinical privileges.  Tate cannot maintain a claim that defendants breached
either a covenant of good faith and fair dealing or a duty of care in suspending his clinical
privileges when, as he concedes in his own complaint, he possessed his clinical privileges
after his removal from the call schedule.  The Court will dismiss the second, tenth, and
eleventh claims with prejudice.

Discretionary-Act Immunity

The Doctor Defendants further argue that they are entitled to discretionary-act
immunity, pursuant to Nev. Rev. Stat. 41.032, as to Tate's second, tenth, and eleventh
causes of action.

While Tate argues that the Doctor Defendants are neither state employees nor
immune contractors, he does not offer any argument that they are not, under the
circumstances he alleges in his complaint, state officers.

Tate further argues that the Doctor Defendants are not entitled to discretionary-
immunity because the Bylaws required that they provide him with "a 'fair' hearing once a
physician's privileges are limited or terminated."  Again, the argument fails because, Tate
conflates the loss of an employment opportunity caused by his removal from the call
schedule with the loss of clinical privileges.  As conceded by Tate, his clinical privileges
were not limited or terminated.  Rather, he was removed from the Trauma Department call
schedule, a loss of an employment opportunity to exercise the clinical privileges that he
possessed.

The UMC Defendants also assert that they are entitled to discretionary-act immunity
as to Tate's second, tenth, eleventh, and twelfth causes of action.

8

To the extent that Tate raises the same argument that the Bylaws required a fair hearing, his argument fails for the same reasons.  To the extent that Tate argues that discretionary-immunity cannot be applied to his claim for breach of the TSA, the Court would note that UMC did not assert immunity as to Tate's sixth claim for breach of contract. The Court will dismiss Tate's twelfth cause of action, alleged against the UMC Defendants, with prejudice as they are entitled to discretionary-act immunity.

<u>Punitive Damages</u>

The UMC Defendants move for summary judgment to the extent that Tate seeks punitive damages on his claims for breach of contract claim and breach of the implied covenant of good faith and fair dealing.  Tate does not offer any argument that he is entitled to punitive damages on his breach of contract claim.  He argues that he can seek punitive damages on his claim for breach of the implied covenant of good faith and fair dealing because it is a derivative of both contract and tort law, and that such an award is appropriate where a party in a superior position has engaged in grievous and perfidious misconduct.

Tate does not, however, cite to any allegation of his complaint and has not submitted any evidence of grievous and perfidious misconduct.

The Court will grant summary judgment to the extent that Tate seeks punitive damages arising from his claim for breach of contract and breach of the implied covenant of good faith and fair dealing.

<u>Breach of Contract & Breach of Covenant of Good Faith and Fair Dealing</u>

UMC argues that Tate's breach of contract and breach of the covenant of good faith and fair dealing claims must be dismissed because the TSA lacks any language requiring that it employ Tate as a trauma on-call surgeon.  Rather, the language of the TSA requires UMC to reimburse Tate if called to the hospital.  As Tate has not alleged that he provided services for which he was not paid, he has not shown a breach of the TSA.

While Tate summarily asserts that UMC breached the TSA on August 8, 2008, by removing him from the call schedule, he does not identify the language, provision, or term of the TSA violated by his removal.  Accordingly, dismissal of these claims with prejudice is appropriate as Tate has not shown that UMC breached the TSA.

Motion for Leave to File Third Amended Complaint

As Tate's proposed Third Amended Complaint was prepared prior to this Order, and as the proposed complaint includes claims that are dismissed with prejudice by this Order, the Court will deny leave to file the Third Amended Complaint as proposed.

The Court will, however, grant Tate leave to file a modified version of his proposed Third Amended Complaint that (a) reflects that the second, sixth, tenth, eleventh, and twelfth causes of action have been dismissed with prejudice, and (b) that does not include the proposed fourteenth cause of action.

Therefore, for good cause shown,

THE COURT **ORDERS** that Defendants' Motions for Summary Judgment (## 125, 126) are GRANTED.  Plaintiff's second, sixth, tenth, eleventh, and twelfth causes of action are DISMISSED with prejudice.

THE COURT FURTHER **ORDERS** that Plaintiff's Motion for Leave to File Third Amended Complaint (#115) is GRANTED as follows: Plaintiff my file a modified version of his proposed Third Amended Complaint, which modifications will (a) reflect that the second, sixth, tenth, eleventh, and twelfth causes of action have been dismissed with prejudice, and (b) delete the proposed fourteenth cause of action.


DATED this ___ day of September, 2010.

_____
Lloyd D. George
United States District Judge

10